**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMERE MONTGOMERY, | : | |
| *Plaintiff,* | : | CIVIL ACTION |
| | : | NO.   15-cv-2815 |
| v. | : | |
| | : | |
| LABORERS' DISTRICT COUNCIL OF | : | |
| PHILADELPHIA AND VICINITY, | : | |
| LABORERS LOCAL 332, | : | |
| RYAN N. BOYER, | : | |
| SAMUEL STATEN, JR. and | : | |
| CORY ROBINSON, | : | |
| *Defendants.* | : | |

**DEFENDANTS' MEMORANDUM OF LAW  IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

**I.      INTRODUCTION**

Plaintiff, Jamere Montgomery ("Montgomery" or "Plaintiff"), a member of Defendant Laborers Local 332 ("Local 332"), has brought this action against Local 332, as well as the Laborers' District Council of Philadelphia and Vicinity ("District Council"), Ryan N. Boyer ("Boyer"), Samuel Staten, Jr. ("Staten"), and Cory Robinson ("Robinson") (Local 332, District Council, Boyer, Staten, and Robinson, collectively the "Defendants"). Montgomery claims, without providing any basis for that claim, that he has a right to employment with the Philadelphia Housing Authority ("PHA"), that Defendants "denied the opportunity for advancement systematically" by not causing PHA to hire him, and that he is entitled to $150,000.00 in damages. None of those claims have any validity as a matter of law, and thus the Complaint should be dismissed in its entirety.

## II.     STATEMENT OF FACTS[1]

Local 332 operates a non-exclusive hiring hall pursuant to various collective bargaining agreement between Local 332 and construction contractors and/or the Contractors Association of Eastern Pennsylvania. Complaint at p. 1. The hiring hall refers Local 332 members to construction jobs within the jurisdiction of Local 332 on the basis of the order they sign a referral book (called a "work book" in the Complaint). Complaint at p. 1. A true and correct copy of the hiring hall rules are attached hereto as Exhibit A.[2] Local 332 members who are looking for work enter their names in the out of work list (also known as the referral book) which indicates their availability for construction work. Exhibit A at section 3.A(2) (p. 2). When contractors contact Local 332 looking for laborers, Local 332 refers members who are entered in the work book to that project for employment in the order the members appear in the book and on the basis of skill sets. See Exhibit A at sections 3F (p. 6-7) and 4A (p. 4) As is the practice in the construction industry, those referrals are not permanent employment. Rather, laborers will work at the construction project until it is finished, and then will reenter their names in the referral book so

---

[1] For purposes of this motion only, Defendants assume, as they must in a Rule 12(b)(6) motion, that the well-plead allegations of Plaintiff are true. Fed. R. Civ. P. 12(b)(6).

[2] While generally courts will only consider the allegations in the complaint and its exhibits, it may also consider documents that are "integral to or explicitly relied upon in the complaint," In re *Burlington Coat Factory*, 114 F.3d 1410, 1426 (3d Cir. 1997), as well as "undisputedly authentic document[s]" that the plaintiff's claims are based upon. *PBGC v. White Consol. Industries*, 998 F.2d 1192, 1196 (3d Cir. 1993). Because the Complaint references the hiring hall and directly pertains to the methods used for placing employees in jobs through the hiring hall, the rules governing the hiring hall are integral to the claims raised by the Plaintiff. Similarly, the collective bargaining agreement between PHA and Local 332, that document is both integral to and are explicitly relied upon by Montgomery's claims in his Complaint. The Complaint also explicitly relies upon the PHA job referral book ("a composite notebook called the PHA book." Complaint at p. 1) and thus the entries in that book for Montgomery are integral to and explicitly relied upon in the complaint. The Court should therefore consider the documents we have attached to this Motion as Exhibits A through C.

they can be referred out again. In addition, because Local 332 runs a non-exclusive hiring hall, the employer can also fill open positions from any other source.

Local 332 also has a separate collective bargaining agreement with PHA (the "PHA CBA"). A true and correct copy of the PHA CBA is attached hereto as Exhibit B. The PHA CBA does not have a hiring hall. Rather, employees under the PHA CBA are employed as maintenance employees in a traditional employment relationship. That is, individuals employed as PHA maintenance employees remain on the job on a permanent basis, until they are fired or quit.

The PHA CBA does provide for a referral system when PHA is seeking to hire a new maintenance employee. Under that system, PHA must ask Local 332 to refer "competent and satisfactory personnel" before PHA seeks applicants from any other source. Exhibit B at section 4 (pp. 2-3). There is no requirement that Local 332 refer applicants to the PHA on the basis of seniority and neither Local 332 nor any other Defendant has any ability to refer an applicant without a request from PHA for a referral.

Montgomery has been a member of Local 332 since 2008. Complaint, p. 1. By virtue of his membership, Plaintiff could enter his name in the hiring hall referral book which would indicate that he was available for assignment to a construction jobs. He also may indicate that he would like a permanent position with PHA, should PHA ask Local 332 for a referral, by entering his name in the PHA referral book. He has never worked for PHA although he has claimed that he has "placed his name on the PHA book at a minimum of three times" since 2009. Complaint, p. 2.

Montgomery believes that Local 332 has somehow caused him to not be hired by PHA. Complaint at p. 2. On April 17, 2015, Montgomery filed the instant action in the Philadelphia

County Court of Common Pleas. On or about May 12, 2015, the Defendants were served and on May 19, 2015, Defendants removed this action to this court.

## III.   ARGUMENT

### A.   Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). The applicable inquiry under 12(b)(6) is well-settled.  Such a motion will only be properly granted when, taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). The burden is on the moving party to show that no claim has been stated. *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980). Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), abrogated on other grounds by *Harlow v. Fitzgerald,* 457 U.S. 800 (1982).  However, courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). See *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429 (3d Cir. 1997); *Kassner v. 2nd Ave. Delicatessen,* 496 F.3d 229, 237 (2nd Cir. 2007).

Simply, a complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal,* supra). If it fails to do so, the defendant is entitled to the affirmative defense provided by Rule 12(b)(6). This rule allows the defendant to file a motion to dismiss a complaint that fails to state a claim upon which relief can be granted. Defendants submit that the Complaint does not

state a claim upon which relief can be granted and so the Defendants are entitled to relief under Rule 12(b)(6).

**B.      Plaintiff Has Not Made Any Specific Claims of Wrongdoing**

In his Complaint, Montgomery asserts that he "has placed his name on the PHA [referral] book at a minimum of three times dating back to 2009 to as recently as Feb. 2015." Complaint at p. 2. The Plaintiff further asserts that he has been "denied the opportunity of advancement systematically by the defendants." Complaint at p. 2. In other words, the heart of his claim is Montgomery's assertion that: (1) he has placed his name on a list to be referred to a job at PHA, if there is an opening, and (2) he did not get a job with PHA. Plaintiff has not named PHA as a defendant in this action. None of the named Defendants have the power to make employment decisions for PHA. While the PHA CBA allows Local 332 to refer applicants for work at PHA, Local 332 cannot control when there might be a vacancy for a maintenance position at PHA and whether the referred individual will be deemed "competent and satisfactory" for the PHA job. While Plaintiff has made the bald assertion that the Defendants "denied [him] the opportunity of advancement systematically," there is no explanation as to how any of the Defendants denied that opportunity. Mere bald assertions of liability are not enough to establish a claim for which relief may be granted. *Iqbal*, 556 U.S. at 678.

**C.      Plaintiff's Claim Wrongly Assumes that Local 332 Maintains a Hiring Hall with PHA**

Construction work, including all of the work that Montgomery has been assigned as a Local 332 member, is assigned through a non-exclusive hiring hall. That is, members of Local 332 enter their name with the Local 332 office if they are seeking construction work. Contractors

will contact Local 332 seeking laborers and Local 332 will refer members who indicated their availability in the work book in the order of placement in the referral book, subject to skill and ability requirements for the particular job. After that job is finished, the laborers are laid off and may reenter their names in the work book in the hopes of being referred to a new construction project.

Local 332 does not have a hiring hall for PHA. Instead, the maintenance employees who are represented by Local 332 are employed by PHA on a more traditional basis. Although under the PHA CBA, Local 332 has the right to refer applicants to PHA if PHA advises Local 332 that it has a vacancy, there is no requirement that Local 332 refer applicants based on seniority or any other manner. The only requirement for a referral is that they are "competent and satisfactory" (see Exhibit B at section 4 (pp. 2-3)), which includes meeting all of PHA's requirements for employment, such a passing a pre-employment drug test.

Plaintiff's claim is based on the mistaken assumption that Local 332 operates a hiring hall for PHA as it does for construction contractors. Thus, Montgomery assumes that if he enters his name in the "PHA book" enough times, eventually he is entitled to a job with the PHA. See Complaint at p. 2. That is simply not the case. Montgomery's entire theory has no basis in the PHA contract and thus he has not stated a claim for which relief may be granted.

### D. Local 332 Has Referred Montgomery for a Job at PHA, but He Was Rejected When He Failed to Pass the Drug Test

Notwithstanding Plaintiff's claims that the Defendants are systematically preventing him from employment with PHA, on two separate occasions, Local 332 tried to refer Montgomery to a job at PHA. According to the notations in the PHA referral book, on September 16, 2013, Local 332 called Montgomery for a PHA referral and left a message. When Montgomery called

back, he told Local 332 "he's working," meaning he was not available to work at PHA. A true and correct copy of excerpts from the PHA referral book are attached hereto as Exhibit C. See Exhibit C at p. 1. On April 28, 2015, Local 332 referred Montgomery to a job with PHA for the second time.[3] Exhibit C at p. 2. Montgomery interviewed with PHA and on April 29, 2015, he informed Local 332 that he had "failed [the] interview." Exhibit C at p. 2. PHA later contacted Local 332 and clarified that Montgomery submitted an ineffective sample for the pre-employment drug test and then left the premises without producing another sample. Exhibit C at p. 3. Thus, PHA declined to hire Montgomery for failing to comply with its pre-employment drug screening rules.

Because Plaintiff's claim is premised on the incorrect assumption that Montgomery was never referred to a job with PHA, it fails to state a claim for which relief may be granted.

### E. Plaintiff Does Not State Any Claims Against Defendants District Council, Staten, Boyer, or Robinson

Despite listing "Laborers [sic] District Council of Philadelphia and Vicinity," "Samuel Staten, Jr.", "Ryan N. Boyer," and "Cory Robinson" in the caption of the Complaint, and several general references within the text of the Complaint to "Defendants," there is no allegation that the District Council or any of the individual defendants harmed Plaintiff in any way. Indeed, the Complaint does not explain who the individuals named in the caption are.[4]

---

[3] The referral was made eleven days after the Complaint was filed in this action on April 17, 2015. However, the referral occurred before the Complaint was served on or about May 12, 2015. Before they were served, Defendants were not aware of this lawsuit.

[4] Boyer is Business Manager of Laborers' District Council. Robinson is President of Local 332. Staten is a business manager for Local 332 and also holds the office of Secretary/Treasurer for the District Council.

Because there are no allegations against the District Council, Staten, Boyer, and Robinson, they should be dismissed from this action. Furthermore, even if we assume that the *pro se* Plaintiff intended to hold the District Council responsible for Local 332's actions because the local is affiliated with the District Council, and that he also intended the individual defendants to be liable as agents of the unions, those claims (had he plead them) must fail as a matter of law. An international union is not responsible for the actions of one of its constituent locals unless there is evidence that it instigated, supported, ratified, or encouraged the local union's actions. *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1288 (3d Cir. 1991) (citing *Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, 218 (1979)). An international union is also not liable when one of its locals breaches a collective bargaining agreement unless it can be proven that the international induced the local to breach the agreement. *Wilkes–Barre Publishing Co. v. Newspaper Guild of Wilkes–Barre, Local 120,* 647 F.2d 372, 382 (3d Cir.1981). The same rule applies to intermediate bodies between the international union and the local, such as the District Council. *Ponton v. AFSCME*, 395 F. App'x 867, 873 n. 4 (3d Cir. 2010). Likewise, individual union officers are not personally liable for actions of the union. *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 247-49 (1962). Thus, even if Montgomery had plead that the District Council, Staten, Boyer, and Robinson were responsible for Local 332's actions, that claim would fail as a matter of law.

## IV.     CONCLUSION

For the foregoing reasons Defendants respectfully requests that Plaintiff's Complaint be dismissed with prejudice in its entirety.

Respectfully submitted,

**CLEARY, JOSEM & TRIGIANI, LLP**

BY:   */s/ Jeremy E. Meyer*
       JOEL TRIGIANI
       JEREMY E. MEYER
       Constitution Place
       325 Chestnut Street, Suite 200
       Philadelphia, PA 19106
       (215) 735-9099
       *Attorneys for Defendants*

Dated:   May 29, 2015

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing *Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule Of Civil Procedure 12(b)(6), Memorandum of Law in Support thereof and proposed Order*, to be served on the below party at the below addresses on the date indicated below, by regular First Class Mail, postage prepaid, and by certified mail, return receipt requested:

Jamere Montgomery
4423 N. Uber Street, Apt. A
Philadelphia, PA 19140

Jamere Montgomery
1202 Burton Avenue
Sharon hill, PA 19079
*pro se Plaintiff*


/s/ *Jeremy E. Meyer, Esquire*
JEREMY E. MEYER, ESQUIRE


Dated:  May 29, 2015