IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMERE MONTGOMERY,<br><br>          *Plaintiff*,<br><br>v.<br><br>LABORERS DISTRICT COUNCIL OF PHILADELPHIA AND VICINITY, *et al*.,<br><br>          *Defendants*. | CIVIL ACTION<br>NO. 15-02815 |

<u>MEMORANDUM</u>

**PAPPERT, J.**                                                                                           **July 27, 2015**

      *Pro se* Plaintiff Jamere Montgomery ("Montgomery") sued Defendants Laborers' District Council of Philadelphia and Vicinity ("the Council"), Laborers Local 332 ("the Local"), Ryan N. Boyer ("Boyer"), Samuel Staten, Jr. ("Staten"), and Cory Robinson ("Robinson") (collectively "Defendants") for alleged violations of "federal labor laws." Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants' motion is granted in part and denied in part for the reasons that follow.

I.

      Montgomery, a construction worker, has been a member of the Local since 2008. (Am. Compl. 1-2, ECF No. 6.)[1] The Local is, in turn, a member of the Council and the Laborers'

---

[1] Montgomery's amended complaint does not contain numbered paragraphs, nor do his motion papers contain page numbers. Accordingly, in citing to the amended complaint and Montgomery's motion papers, this memorandum will refer to the page numbers assigned by the Court's electronic filing system.

International Union of North America ("LIUNA").[2] (*Id*. at 1.) This lawsuit concerns ongoing conflicts Montgomery has had with Local and Council leadership (namely, Boyer, Staten and Robinson) in the operation of its hiring hall[3] since 2013. (*Id*.) Boyer is Business Manager of the Council, Robinson is President of the Local, and Staten is Secretary/Treasurer of the Council and Business Manager of the Local. (Mot. Dismiss 13 n.6, ECF No. 7.)

Montgomery's amended complaint recounts several alleged unfair labor practices dating back to 2013. In June 2013, Montgomery claims that he started a petition whereby he "gathered the names and signatures of approximately 20 members to protest the unfair hiring hall policies and deliberate violation[s] of union members['] rights to fair and equal job opportunities." (Am. Compl. 1.) Staten and Robinson allegedly told Montgomery that "it was not his job to speak for anybody or about anything in the hall." (*Id*.)

A month later, in July 2013, Montgomery filed a grievance contending that he was deliberately passed over for employment at the Philadelphia Housing Authority ("PHA") and treated with hostility for requesting copies of the Local's bylaws and collective bargaining agreements ("CBAs").[4] (Am. Compl. 1.) Defendants held a hearing "and made findings to there being no cause for the grievance and dismissing it as unverifiable." (*Id*.)

---

[2] Defendants describe the Council as an "intermediate bod[y]" between the Local and LIUNA. (*See* Mot. Dismiss 12-13, ECF No. 7.)

[3] Unions operate hiring halls by maintaining "out of work" lists of their members "as a means of making job referrals to contractors who have entered into collective bargaining agreements" with the union. *Lawson v. Passaic Cnty. & Vicinity Carpenters & Millwrights Local 124*, 50 F. App'x 73, 76 (3d Cir. 2002).

[4] Defendants explain that the Local has a CBA with the PHA whereby the PHA, when it has an open position for a maintenance employee, is obligated to ask the Local to refer "competent and satisfactory personnel" before the PHA seeks applications from any other source. (*See* Mot. Dismiss 3, Ex. B.) The Court may consider the PHA CBA, which was attached to Defendants' Motion to Dismiss, because it is an undisputedly authentic document on which Montgomery's claims are based. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (stating that, in deciding a motion to dismiss, courts can consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). These PHA jobs are especially desirable because the union member enjoys a traditional employment

Presumably in connection with the petition he started in June 2013, Montgomery attempted to organize a "Committee of Concerned Laborers of Local 332" to review the Local's "unfair hiring practices and illegal retaliation against member[s] who exercise their statutory rights to participate and assemble in lawful union activities." (Am. Compl. 2.) In June 2014, Montgomery attempted to introduce a resolution for the formation of such committee at a general membership meeting. (*Id*.) Robinson as chairman, however, "refused to accept it or acknowledge [Montgomery's] right to participate in the meeting." (*Id*.) Additionally, Staten told Montgomery he would "shut it down." (*Id*.) Defendants further threatened to bring Montgomery up on charges for being disruptive at meetings. (*Id*.)

There are a few places in the amended complaint where Montgomery becomes more specific in his allegations of "unfair hiring practices and illegal retaliation." Montgomery pleads that the Defendants engage in a strategy of "blackballing" or "blacklisting" to control the Local and its members and "deny employment and other benefits to members who actively engage in union activities." (Am. Compl. 2.) Montgomery claims that in retaliation for filing grievances, he has been passed over for referrals to more favorable jobs, including jobs with the PHA. (*Id*.) Montgomery also alleges that Defendants maintain two "out-of-work books" (one for PHA jobs and one for all other jobs), which "is a direct violation of hiring hall guidelines and the bylaws of the organization." (*Id*.) Montgomery states that he complained about this dual out-of-work book system in his July 2013 grievance, but was simply told "he was on the list" and his "grievance was dismissed as lacking merit." (*Id*.)

Montgomery details two final instances of Defendants' alleged wrongful behavior in May 2015. First, Montgomery claims that "just days" after he initiated this litigation, Defendants

---

relationship with the PHA—that is, the job is permanent and, as Montgomery highlights in the amended complaint, offers paid holidays and vacations. (*See* Am. Compl. 2, ECF No. 6; Mot. Dismiss 3.)

referred him to a job with the PHA. (Am. Compl. 2.) Montgomery went to PHA for the interview and provided a urine sample for a drug analysis test. (*Id*.) The PHA told Montgomery that his urine sample was not the right temperature. (*Id*.) Montgomery "left the facility" and did not get the job. (*Id*.) Second, Montgomery contends that in May 2015 he was "thrown off of a job . . . for an alleged safety violation" despite having over 40 hours of safety training. (*Id*.) The employer, who "happens to be one of the biggest employer[s] of union laborers in the area," told Montgomery that he will not be rehired. (*Id*.) A supervisor allegedly told Montgomery that "the union was out to get him." (*Id.*)

Montgomery filed this lawsuit against the Defendants on April 17, 2015 in the Philadelphia Court of Common Pleas. (Not. of Removal 1, ECF No. 1.) Defendants removed the case to this Court, and Montgomery was granted leave to file an amended complaint on May 29, 2015. (ECF No. 5.) Defendants thereafter filed a motion to dismiss the amended complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing in part that the amended complaint fails to make any specific claims that have a legal remedy.[5] (Mot. Dismiss 5.) In response, Montgomery clarified that his claims arise under the Labor Management Reporting and Disclosure Act's ("LMRDA") "bill of rights." (Opp'n Mot. Dismiss 3, ECF No. 8.)

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough; the

---

[5] The amended complaint does not list Montgomery's claims in separate counts. Rather, it is comprised of a two-page narrative of factual allegations along with a demand for relief. (*See* Am. Compl. 1-2.)

complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *i.e.*, sufficient facts to permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009) (quotation and citation omitted).

The court must construe the complaint in the light most favorable to the plaintiff. *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010) (quoting *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009)). However, while all allegations contained in the complaint must be accepted as true, the court need not give credence to mere "legal conclusions" couched as facts. *Iqbal,* 556 U.S. at 678. To decide a motion to dismiss, courts consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Finally, as Montgomery is proceeding *pro se*, the Court is mindful that the amended complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (citing *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)). Nevertheless, the Court must review the amended complaint to ensure that it meets the *Iqbal* plausibility standard. *Id*. (citing *Iqbal*, 556 U.S. at 678).

### III.

Title I of the LMRDA provides union members with an exhaustive "Bill of Rights" enforceable in federal court. *Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526, 536 (1984) (citing 29 U.S.C.

5

§§ 411-415). "In particular, Title I is designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." *Id*. at 536-37. The pertinent subparts of Section 101 of the LMRDA's Bill of Rights provide:

> (2) Freedom of speech and assembly
>
> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
>
> \* \* \*
>
> (5) Safeguards against improper disciplinary action
>
> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411.[6] Disciplinary action is also treated again in Section 609, where the LMRDA states that unions may not discipline their members for exercising any right to which they are entitled under the Bill of Rights. *See* 29 U.S.C. § 529 ("It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization,

---

[6] A violation of a union members' rights under Section 101 is made actionable by Section 102. *See* 29 U.S.C. § 412 ("Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.").

or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter.").

Here, liberally construing the allegations in the amended complaint, Montgomery alleges that Defendants violated his rights to free speech and assembly under Section 101(a)(2) and then improperly disciplined (or "blacklisted") him for exercising those rights in violation of Sections 101(a)(5) and 609. (*See* Am. Compl. 1-2.) In their briefing, Defendants counter that Montgomery has failed to exhaust his administrative remedies and the amended complaint alleges no direct wrongdoing by the Council, Staten, Boyer, or Robinson. (Mot. Dismiss 8-13.) Defendants further posit that Montgomery "does not identify jobs that he was passed over for . . . . Thus, the claim of 'blackballing' is nothing more than a bald assertion of wrongdoing, which is not sufficient to survive a Rule 12(b)(6) motion." (Reply in Supp. Mot. Dismiss 4, ECF No. 9.) The Court will consider Montgomery's claims under Sections 101(a)(2) & (5) and 609 in turn.

**IV.**

In examining Section 101(a)(2) of the LMRDA, the United States Supreme Court has stated that "the legislators intended § 101(a)(2) to restate a principal First Amendment value— the right to speak one's mind without fear of reprisal." *Reed v. United Transp. Union*, 488 U.S. 319, 325 (1989) (citing *Steelworkers v. Sadlowski,* 457 U.S. 102, 111 (1982)). While a violation of First Amendment free speech rights by itself is insufficient to violate Section 101(a)(2), *Sheet Metal Workers' Int'l Assoc. v. Lynn,* 488 U.S. 347, 353 (1989), infringement of a union member's free speech must be viewed with reference to the basic objective of the LMRDA: "to ensure that unions [are] democratically governed, and responsive to the will of the union membership." *Finnegan v. Leu*, 456 U.S. 431, 441 (1982). In other words, the "subject matter

7

of any protected speech must 'directly relate' to the union-member relationship." *Kovach v. Turner Dairy Farms, Inc.*, 929 F. Supp. 2d 477, 490 (W.D. Pa. 2013) (citing *Semancik v. United Mine Workers of Am. Dist. No. 5,* 466 F.2d 144, 154 (3d Cir.1972)).  In this vein, the Third Circuit has directed district courts to take an "expansive view of union speech rights." *See Foley v. Int'l Bhd. of Elec. Workers Local Union 98 Pension Fund*, 91 F. Supp. 2d 797, 811 (E.D. Pa. 2000) (citing *Ruocchio v. United Transp. Union, Local 60,* 181 F.3d 376, 386 (3d Cir. 1999), *cert. denied,* 528 U.S. 1154 (2000)).

Reading the amended complaint liberally, accepting Montgomery's allegations as true, and construing all facts in a light most favorable to him, the Court finds that Montgomery has stated a claim for a violation of his rights to free speech and assembly under Section 101(a)(2). The amended complaint alleges that since June 2013 when Montgomery started a petition, he has been attempting to form a committee to review perceived unfair policies and practices of the Local's hiring hall, but Defendants have been hostile to the idea.  At a general membership meeting a year later, Defendants still refused to hear Montgomery's resolution and told him they would "shut it down."  Defendants also retaliated against Montgomery (by refusing to refer him to jobs) for his perceived troublemaking activities.  These allegations directly relate to the union-member relationship between the Local and Montgomery.  Moreover, these allegations implicate the relationship between the Local and any other members who share Montgomery's views. "Intimidation and impeding speech would naturally discourage members from invoking their legal rights under federal labor law, and is wholly antithetical to the protection of the LMRDA." *Kovach*, 929 F. Supp. 2d at 490.

Given plaintiff's *pro se* status and the early stage of this litigation, Montgomery's allegations are sufficient to withstand Defendants' motion to dismiss.  *See, e.g., Kovach*, 929 F.

Supp. 2d at 490 (refusing to dismiss Section 101(a)(2) claim because "[i]t is more than plausible that the conduct and harassment by Shafer, if proven, was indeed a very direct reprisal for Plaintiff's criticism of Union policy and Shafer's leadership as Union Steward."); *Maier v. Patterson*, 511 F. Supp. 436, 446-47 (E.D. Pa. 1981) (union leader's treatment of plaintiff as a "shitstirrer" and aggression towards plaintiff at an official meeting in response to plaintiff's criticism of his leadership stated a claim under Section 101(a)(2)); *cf. Collins v. Pennsylvania Tel. Union, Local 1944, IBEW, AFL-CIO*, 431 F. Supp. 842, 845 (W.D. Pa. 1977) (reasoning that a Section 101(a)(2) claim is sufficiently alleged where "established union history or articulated policy [shows] a purposeful and deliberate attempt by union officials to suppress dissent.").

Defendants rely on the transcript from Montgomery's July 2013 grievance hearing, attached to their motion to dismiss, in arguing that Montgomery's allegations of the Local's wrongful hiring hall practices are without merit. (Mot. Dismiss 6-7 & Ex. F.) The Court acknowledges Defendants' argument, but consideration of such extrinsic evidence on a motion to dismiss would be premature. At this stage, the Court can only consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *Pension Ben. Guar. Corp.*, 998 F.2d at 1196. It is true that the Court can consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *id.*, such as an insurance policy between parties in an insurance coverage case, *e.g., Simmons v. Trumbull Ins. Co.*, No. 11-cv-6571, 2012 WL 1439082, at *3 n.1 (E.D. Pa. Apr. 25, 2012), or a corporation's annual report in a securities fraud case. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Indeed, for a document to form the basis of a plaintiff's claim, plaintiff's claims must "turn on [the document's] interpretation." *Stanford v. Foamex L.P.*, No. 07-cv-4225, 2008 WL 3874823, at *4 (E.D. Pa.

Aug. 20, 2008). That is not the case here, where Montgomery's claims encompass events both preceding and following the July 2013 hearing and do not depend (at least not to a dispositive extent) on the Court's interpretation of the hearing transcript. Defendants are free to raise their arguments again and offer the July 2013 hearing transcript as evidence for the Court's proper consideration at summary judgment.[7] Defendants' motion to dismiss Mongtomery's Section 101(a)(2) claim is denied.

## V.

The amended complaint, however, does not state a claim under Sections 101(a)(5) and 609 because Montgomery alleges no official union action that amounts to "discipline." The reprisals Montgomery alleges in the amended complaint accuse Defendants, most often singling out Staten and Robinson, of surreptitiously "blacklisting" or passing Montgomery over for jobs, particularly jobs with the PHA. However, the Supreme Court made clear in *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6* that by using the phrase "otherwise discipline" in Sections 101(a)(5) and 609, "Congress did not intend to include all acts that deterred the exercise of rights protected under the LMRDA, but rather meant instead to denote only punishment authorized by the union as a collective entity to enforce its rules. Discipline is the criminal law of union government. The term refers only to actions undertaken under color of the union's right to control the member's conduct in order to protect the interests of the union or its membership."

---

[7] For the same reasons, it is improper for the Court to look at the May 2015 emails attached to Defendants' motion to dismiss. (*See* Mot. Dismiss, Exs. C-D.) These emails are extraneous to the pleadings and cannot be considered at the 12(b)(6) stage. *Pension Ben. Guar. Corp.*, 998 F.2d at 1196. Moreover, the issue is a moot one because Montgomery's allegations regarding events in May 2015 are irrelevant to the analysis of his claims against the Defendants.

Defendants are comprised of Montgomery's unions and their officers. However, Montgomery's May 2015 allegations relate wholly to problems he had with his employers. Montgomery complains that in May 2015 the PHA refused to accept his urine sample because it "was not the right temperature" and an unnamed construction employer fired him "for an alleged safety violation." (Am. Compl. 2.) Neither of these allegations describes any wrongful action on the part of the union. Because Montgomery's May 2015 allegations do not involve Defendants, the Court need not examine them any further.

493 U.S. 67, 91 (1989) (citation and quotations omitted). "[C]oercion, intimidation, and economic reprisals by union officers do not constitute 'discipline.'" *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1297 (3d Cir. 1991) (citing *Breininger*, 493 U.S. at 94); *Maier*, 511 F. Supp. at 444 ("By the principle of *ejusdem generis*, the general expression 'otherwise disciplined' connotes action similar to the specific acts of fining, suspending, or expelling. What these specific acts have in common is that they stem from the peculiar authority of the union over its members.") (emphasis added).

The Third Circuit has interpreted *Breininger* to require that an action meet three criteria before it can be considered discipline under Sections 101(a)(5) and 609:

> First, the suspension of job referrals by a hiring hall can qualify as "discipline," just as can a fine, suspension or expulsion. Second, the purpose of discipline must be to "enforce [the union's] rules," or to "punish a violation of union rules," as opposed to engaging in "ad hoc retaliation," motivated by "personal vendettas" such as a business agent's anger over a member's political views. Third, the punishment must be "authorized by the union," or carried out by the union in its "official capacity," through "some sort of established disciplinary process," such as being the subject of a "tribunal" or of "proceedings" conducted by the union.

*Bullock v. Dressel*, 435 F.3d 294, 298 (3d Cir. 2006) (citations omitted). Here, Montgomery's allegations of blacklisting meet the first criterion, but they fail to meet the second or third. There is no allegation that Staten and Robinson, or even the Local at large, blacklisted Montgomery for the purpose of enforcing the union's rules or punishing Montgomery for a violation of those rules. *See Bullock*, 435 F.3d at 298 ("Retaliating against the authors of an informal complaint letter [via blacklisting] is not the enforcement of union rules.").

Nor does the blacklisting Montgomery alleges rise to the level of formality required for it to be considered punishment "authorized by the union" or carried out by the union in its "official capacity." Montgomery does not claim that he was blacklisted through any sort of "established

11

disciplinary process"—he does not allege he was brought up on charges,[8] fined, suspended, expelled or otherwise punished by a union tribunal. This lack of official action taken in the name of the union itself through an established disciplinary channel is fatal to Montgomery's Sections 101(a)(5) and 609 claims. *See Bullock*, 435 F.3d at 298 ("Dressel's refusal to refer the appellants, and mailing of a list of their names to other locals' managers in order to 'blacklist' them, does not resemble 'some sort of established disciplinary process,' nor did it make appellants the subject of a union 'tribunal' or 'proceeding' through which they could claim they were denied the procedural due process required by § 101(a)(5)."); *see also Breininger*, 493 U.S. at 94 ("In the instant case, petitioner alleged only that the union business manager and business agent failed to refer him for employment because he supported one of their political rivals. . . . According to his complaint, he was the victim of the personal vendettas of two union officers. The opprobrium of the union *as an entity,* however, was not visited upon petitioner. He was not punished by any tribunal, nor was he the subject of any proceedings convened by respondent. In sum, petitioner has not alleged a violation of §§ 101(a)(5) and 609") (emphasis in original); *Brenner*, 927 F.2d at 1297 (finding blacklisting allegations in "this case [are] indistinguishable from *Breininger* because the union members failed to allege acts by the union acting in its official capacity and instead raised only ad hoc retaliations by the individual union official.").

Because Montgomery's blacklisting allegations do not meet the Third Circuit's criteria for "discipline," his claims under Sections 101(a)(5) and 609 are dismissed.

---

[8] Montgomery does state in the amended complaint that the defendants "threatened" to bring him up on charges for being disruptive at meetings (Am. Compl. 2), but does not allege that this threat was ever carried out.

**VI.**

Defendants argue that the amended complaint should be dismissed because Montgomery has failed to exhaust his intra-union remedies.  (Mot. Dismiss 8-12.)  Specifically, Defendants maintain that although Montgomery filed written grievances and attended at least one hearing on his grievances in July 2013, he never appealed that hearing decision as he was entitled to do under the LIUNA Constitution.  (*Id*. at 10-11.)  Defendants contend that although exhaustion is a discretionary, not mandatory, requirement under *Clayton v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 451 U.S. 679, 692 (1981), it is appropriate to impose the requirement in this case.  (Mot. Dismiss 8-9.)

Defendants' reliance on *Clayton* as controlling precedent is inaccurate because *Clayton* dealt with claims brought under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, *et seq*., not the LMRDA.[9]  Exhaustion is, however, a statutory requirement under Section 101(a)(4) of the LMRDA:

> (4) Protection of the right to sue
>
> No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative,

---

[9] Because Montgomery does not seek to sue any of his employers, the Court reads the amended complaint as not bringing any claims against Defendants under the LMRA.  Such a claim against the union, *i.e.*, one for breach of the union's duty of fair representation under the LMRA, must be brought in conjunction with a claim against an employer to be actionable.  *See Deans v. Kennedy House, Inc.*, 998 F. Supp. 2d 393, 418 (E.D. Pa. 2014) ("Such a [so-called 'hybrid § 301/fair representation'] claim 'comprises two causes of action': a suit against the employer for breach of a collective bargaining agreement under § 301 of the LMRA, and a suit against the union 'for breach of the union's duty of fair representation . . . .  Those two actions are interdependent.  A plaintiff can only recover for an employer's breach of the collective bargaining agreement if he can show that because of his union's unfair representation, he should not be bound by the result of the CBA's grievance procedure.  Likewise, a union's breach of that duty is actionable only if the employer did in fact breach the terms of the CBA.") (citing *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164 (1983)), *aff'd*, 587 F. App'x 731 (3d Cir. 2014).  Hence, the absence of a defendant-employer here, as well as Montgomery's assertions in his opposition brief that his claims arise under the LMRDA (Opp'n Mot. Dismiss 3), inform the Court that Montgomery's claims against Defendants are limited to those under the LMRDA.

> or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof[.]

29 U.S.C. § 411; *see also Local Union No. 1075, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO v. United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO*, 716 F.2d 182, 185 (3d Cir. 1983) (distinguishing the LMRA's exhaustion requirement as "[u]nlike exhaustion with regard to claims under certain titles of the Labor-Management Reporting and Disclosure Act of 1959, which Congress has statutorily imposed").

The Third Circuit has held that a court may waive Section 101(a)(4)'s exhaustion requirement in certain circumstances:

> Several grounds have been found to be particularly appropriate bases for waiving the exhaustion requirement of Section 101(a)(4). When plaintiffs will suffer irreparable harm in their jobs, or in the exercise of rights guaranteed to them under the LMRDA, courts have found the preservation of the individual interest more important than that of union autonomy. Similarly, when the internal appeals structure is inadequate or illusory, or is controlled by those to whom the plaintiff is opposed, exhaustion has been deemed futile and contrary to the purposes of the LMRDA. Finally, where the union has consistently taken a position opposed to that of the plaintiff and makes no indication that it will alter its views, there is no purpose in requiring an adjudication by the labor organization. In these cases, the courts are particularly solicitous when the right of free speech is at stake.

*Semancik v. United Mine Workers of Am. Dist. No. 5*, 466 F.2d 144, 150-51 (3d Cir. 1972) (citations omitted).

Defendants argue that "Montgomery has not claimed that any of the Defendants are hostile to him or that he does not have the hopes of obtaining a fair hearing from his claim in an internal union appeal." (Mot. Dismiss 9.) Reading the amended complaint liberally, as it must,

the Court disagrees. The amended complaint paints the picture of Defendants, especially Staten and Robinson, being hostile towards Montgomery's views and grievances. Montgomery's description of the June 2014 meeting is a good example of this, where in response to Montgomery's suggestion that a committee be formed to review the Local's hiring hall practices, Staten stated that he would "shut it down." (Am. Compl. 2.) The amended complaint also alleges that Montgomery has been "suffer[ing] significant financial damage due to being blackballed" and has been told "the union [is] out to get him." (*Id.*)

Given the early stage of this litigation and lack of an evidentiary record, the Court is unable to discern whether exhaustion would be futile because this is a case "where the union has consistently taken a position opposed to that of the plaintiff and makes no indication that it will alter its views" or because an appeal would be "controlled by those to whom [Montgomery] is opposed." *Semancik*, 466 F.2d at 151; *see also Maier*, 511 F. Supp. at 441 ("A plaintiff is not compelled to exhaust internal union remedies when the appeal would have to be made to the very officers against whom the complaint is directed."). Montgomery has stated enough factual allegations in the amended complaint to make these situations plausible. Therefore, the Court will not dismiss the complaint on the grounds of exhaustion at this time.

## VII.

Finally, Defendants argue that the amended complaint should be dismissed against the Council, Staten, Boyer, and Robinson because (1) an intermediate union body cannot be held liable for the acts of one of its local unions, and (2) individual union officers are not personally liable for actions they take on behalf of a labor union. (Mot. Dismiss. 12-13.)

Defendants are correct that an intermediate or international union cannot be held liable for the acts of one of its local unions unless the intermediate or international union "*itself*

instigated or actively supported" the alleged illegal acts. *See Ponton v. AFSCME*, 395 F. App'x 867, 873 n.4 (3d Cir. 2010) (emphasis in original) (citing *Anjelino v. N.Y. Times Co.,* 200 F.3d 73, 95-96 (3d Cir. 1999) and *Brenner,* 927 F.2d at 1289). Here, however, the Council can be held liable for the actions of Staten, who is its Secretary/Treasurer. *See Urichuck v. Clark*, 689 F.2d 40, 43 (3d Cir. 1982) ("The actions of union officers are tested by common law theories of agency. Thus, if their actions fall within the scope of their authority, they are acting for the union and whatever liability flows from their actions flows to the union also. However, if their illegal actions fall without the scope of their authority, they must bear the consequences alone."). Because the amended complaint contains numerous allegations of wrongful conduct committed by Staten, the Council is a proper defendant as well.

Defendants cite to *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 247-49 (1962) to support their second argument that individual union officers are not personally liable for actions they take on behalf of a labor union. *Atkinson*, however, was a case where an employer sought damages from individual union members for their union's breach of a CBA. 370 U.S. at 239-40. Accordingly, the Third Circuit has explained that "the law is clear that individual union officers are not personally liable to third parties for actions taken on behalf of the union in the collective bargaining process." *Carino v. Stefan*, 376 F.3d 156, 159-60 (3d Cir. 2004). That is not the case here, where the dispute lies between a union member and his union/union leaders for their alleged violations of the union members' rights under the LMRDA. In such a situation, it is clear that a union official can be liable for his own acts which deprive a member of his rights under the LMRDA. *See Brenner*, 927 F.2d at 1287 (recognizing suit by union member against unions and union officers for violation of LMRDA rights); *see also Schermerhorn v. Local 100, Transp. Workers Union of Am., AFL-CIO*, 91 F.3d 316, 324 (2d Cir. 1996) ("[A] union official

who aids abets, instigates, or directs a wrongful use of union power to deprive a member of his rights under § 101 may be held liable under § 102.") (citing *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10,* 605 F.2d 1228, 1246-47 (2d Cir. 1979), *cert. denied,* 446 U.S. 919 (1980)); *Farrell v. Hellen*, 367 F. Supp. 2d 491, 501 (S.D.N.Y. 2005) ("A union official is liable not only if he directly abridges a member's free speech rights, but also if he 'aids, abets, instigates, or directs a wrongful use of union power to deprive a member of his rights.'") (citing *Schermerhorn*, 91 F.3d at 324).

Because the amended complaint alleges that Staten and Robinson took actions on multiple occasions to infringe Montgomery's free speech and assembly rights, they are proper defendants in this case. In contrast, the amended complaint is devoid of any allegations against Boyer. As Montgomery has made no allegations against Boyer at all, much less allegations sufficient to raise a plausible right to relief, *Twombly,* 550 U.S. at 555, Boyer is dismissed from the case.

## VIII.

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. An appropriate order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
