IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMERE MONTGOMERY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LABORERS DISTRICT | : | No. 15-2815 |
| COUNCIL OF PHILADELPHIA | : | |
| AND VICINITY, et. al., | : | |
| | : | |
| Defendants. | | |

**MEMORANDUM OPINION**

**Timothy R. Rice**                                                              **April 1, 2016**
**U.S. Magistrate Judge**

Plaintiff Jamere Montgomery alleges that Defendants Laborers Local 332 ("Local 332"), the Laborers' District Council of Philadelphia and Vicinity ("District Council"), Samuel Staten, Jr.,[1] and Corey Robinson[2] violated his rights of free speech and assembly under Section 101(a)(2) of the Labor Management Reporting and Disclosure Act ("LMRDA").[3]  Sec. Am. Compl. at ¶ 1.  Montgomery alleges Staten and Robinson criticized and threatened him in response to his protests against Local 332.  Sec. Am. Compl. ¶ 28; Pl.'s Resp. (doc. 29) at 11. Montgomery further alleges Defendants retaliated against him after he filed this lawsuit in 2015 by causing him to be wrongfully terminated from three jobs and by failing to place him in a job steward position with Local 332.  Id. ¶ 36; Pl.'s Resp. at 11.

---

[1]   Staten is Local 332's business manager and the District Council's secretary and treasurer. See Sec. Am. Compl. (doc. 22) at ¶ 10.

[2]   Robinson is Local 332's president.  See Sec. Am. Compl. at ¶ 11.

[3]   Montgomery also sued Ryan N. Boyer, a Local 332 Executive Board Member, and brought claims against the Defendants under Sections 101(a)5 and 609 of the LMRDA.  See Am. Compl. (doc. 6).  This Court, however, dismissed those claims on July 27, 2015.  See

Defendants seek summary judgment, arguing that Montgomery failed to exhaust his intra-union remedies pursuant to the LMRDA's exhaustion requirement, and that he has failed to produce any evidence of the suppression of his free speech and assembly rights. Defs.' Memo. in Support of Motion for Summary Judgment (doc. 28) at 8, 11.

I grant Defendants' motion. Montgomery failed to exhaust his remedies under the LMRDA when he chose not to appeal his September 2013 hearing decision. Montgomery also has failed to raise any genuine issues of material fact concerning whether Defendants violated his rights under the LMRDA. Staten's statements did not infringe on Montgomery's rights of free speech and assembly, and no reasonable jury would conclude Defendants caused his termination from three jobs in retaliation for filing this lawsuit.

**I. Legal Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

Where there is only one reasonable conclusion from the record regarding the potential verdict under the governing law, summary judgment must be awarded to the moving party. See id. at 250. "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." Id. at 250-51. I may consider only admissible evidence. See Williams v. Borough of West Chester, Pa., 891 F.2d 458, 471 (3d Cir. 1989) ("Only evidence admissible at trial may be used to test a summary judgment motion."). I must view the facts and

---

7/27/15 Memorandum at 12, 17 (doc. 12).

any inferences from those facts in the light most favorable to the non-moving party.  See Ray v. Warren, 626 F.3d 170, 173 (3d Cir. 2010).  Uncorroborated allegations are insufficient to overcome summary judgment.  See Solomon v. Soc'y of Auto. Eng'rs, 41 F. App'x 585, 586 (3d Cir. 2002) (summary judgment warranted because the only evidence in support of plaintiff's claims was his own testimony).

## II. Facts

The following facts are viewed in the light most favorable to Montgomery.  See Ray, 626 F.3d at 173.  In 2008, Montgomery became a member of Local 332, part of the District Council and the Philadelphia-area local chapter of the Laborer's International Union of North America ("LIUNA").  Sec. Am. Comp. at ¶¶ 9, 15.  In 2013, Montgomery began to voice his concerns with Local 332's hiring hall practices.[4]  PSOF ¶¶ 2-3.  In June 2013, Montgomery gathered 20 members' signatures for a petition in protest of Local 332's alleged circumvention of the "seniority" system to offer certain members job preference.  See Sec. Am. Comp. at ¶¶ 18-20.  Staten and Robinson subsequently told him to "stop being disruptive" and that "it was not his job to speak for anybody about the issues in Local 332."  PSOF ¶ 16.  Staten also told Montgomery that "he was the Business Manager and 'he's going to shut . . . Montgomery down,'" and "'[n]obody else has a problem but you.'"  Id. at ¶¶ 15-16.

On July 1, 2013, Montgomery filed a formal grievance, see Pl.'s Ex. D, and on July 26, 2013, Local 332 held a grievance hearing, see PSOF ¶ 23; Hearing Transcript, Pl.'s Ex. G.  In

---

[4]  Local 332 operates a non-exclusive hiring hall pursuant to various collective bargaining agreements between Local 332 and construction contractors.  Defs.' MSJ Memo. at 1; see LIUNA Am. Job Referral Rules, Defs.' Ex. B.  When contractors contact Local 332, the union calls and refers members in the order that they signed the referral book, subject to the qualifications demanded by the specific job.  See Defs.' MSJ Memo at 2; Plaintiff's Statement of Facts ¶ 4 (quoting Defs.' Resp. to Interrogatories, Pl.'s Ex. K).

September, Montgomery received a letter that his grievance had been dismissed.  See PSOF ¶ 24; Denial of Grievance Letter, Pl.'s Ex. E.  He did not appeal that decision.  Pl.'s Dep. at 126.  Staten later told Montgomery he "'would be in a boat with the rest of the members that he considers a waste of time' if he continued to complain."  PSOF ¶ 25.

At a March 2014 general membership meeting, Montgomery presented a motion requesting that Local 332 make changes to the annuity and pension plan.  PSOF ¶ 27; Pl.'s Ex. F.  The annuity and pension fund is a legal entity separate from Local 322.  See Central Pennsylvania Teamsters Pension Fund v. W & L Sales, Inc., 778 F.Supp. 820, 831 (E.D.Pa.1991); Defs.' Reply at 4; Staten Aff. ¶ 9.  Staten told Montgomery to "'sit down' and 'be quiet,'" and that if he continued to be disruptive, he would be charged with misconduct.  PSOF ¶¶ 29, 31; Staten Aff. ¶ 10.

Montgomery filed this lawsuit on April 15, 2015.  PSOF ¶ 32.  Between May and July 2015, he was fired from two union jobs—Sabia and Intech—and another job at Townscapes, Inc. he found through Craigslist.com.  See id. ¶¶ 33, 40-41, 47-49.  Andrew Robinson, secretary and treasurer of Local 332, showed up at Sabia and Townscapes the same days Montgomery was terminated.  PSOF ¶¶ 35, 46; Pl.'s Resp. at 9.  All three employers wrote letters to Robinson or Staten explaining the reason for Montgomery's termination.  Pl.'s Exs. H, I, J.  Sabia said it fired Montgomery for failure to wear a safety harness on the morning of the day Defendants were later served with notice of this lawsuit.  See PSOF ¶ 34; Pl.'s Ex. H; Defs.' Ex. P.  Townscapes said it fired Montgomery because he was unable to drive its truck, and Intech said he was fired for taking unauthorized breaks.  PSOF ¶¶ 41-42; Pl.'s Resp. at 9; Pl.'s Ex. J.

4

### III.  Discussion

#### A. Exhaustion

Defendants argue Montgomery failed to exhaust his intra-union remedies when he failed to appeal his July 2013 hearing decision.   See Defs.' MSJ Memo. at 11-13.

Section 101(a)(4) of the LMRDA permits labor unions to impose exhaustion requirements, provided they are "reasonable hearing procedures" that do not exceed four months. 29 U.S.C. § 411.   However, a court may waive the exhaustion requirement when: (1) "plaintiffs will suffer irreparable harm in their jobs, or in the exercise of rights guaranteed to them under the LMRDA;" (2) "the internal appeals structure is inadequate or illusory, or is controlled by those to whom the plaintiff is opposed;" or (3) "the union has consistently taken a position opposed to that of the plaintiff and makes no indication that it will alter its views."   Semancik v. United Mine Workers of Am. Dist. No. 5, 466 F.2d 144, 150-51 (3d Cir. 1972) (citations omitted). "[C]ourts are particularly solicitous when the right of free speech is at stake."   Id. at 151.

The LIUNA constitution requires union members to exhaust all internal remedies available before bringing action against their local union, district council, or union officers. Article XVI, Section 2, Defs.' Ex. I.   The internal union remedies includes two steps: (1) filing written charges and attending a hearing before the local union's Executive Board, during which the complaining union member may present evidence and examine witnesses; and (2) appealing the Board's unfavorable decision to the General Executive Board of the International Union. Id., Article XI, Section 7.

Viewing the facts in the light most favorable to Montgomery, he fails to show he exhausted the internal remedies required under the LIUNA Constitution.   In July 2013,

Montgomery filed a written grievance and attended a hearing.   Sec. Am. Compl. ¶ 21; Montgomery's Formal Grievance, Defs.' Ex. F, Pl.'s Ex. D.   He received an unfavorable hearing decision on September 13, 2013, Pl.'s Ex. E, but he failed to challenge that decision.[5]   Pl.'s Dep. at 126.

Review of the hearing transcript shows Montgomery received a fair hearing with an adequate opportunity to be heard.   See 29 U.S.C. § 411.   The Board read aloud Montgomery's written grievance and addressed each relevant article in the union constitution.   See 7/26/13 Hearing Transcript, Defs.' Ex. G, at 3-16.   Throughout the hearing, Montgomery expressed concern about how the referral system was operated,[6] and the Board responded adequately.   Montgomery referenced a day he did not get a job referral despite being number one on the list.   Id. at 22-23.   However, the Board explained to him that he had broken the union rules by leaving the hiring hall early.   Id.   The Board also noted Montgomery had failed to update his referral number, as he was required to do every 30 days.   Id. at 24.

Montgomery also objected to Local 332's practice of having two referral books, that he did not did not know where he stood in the PHA referral book, and that certain members behind him on the referral list were being placed in jobs before him.   See, e.g., id. at 34-35, 43.   Staten

---

[5]   Montgomery admitted he was aware of the internal appeals process when he filed his grievance.   See Montgomery's Formal Grievance, Defs.' Ex. F, Pl.'s Ex. D; Hearing Transcript, Defs.' Ex. G. at 4; Pl.'s Dep. at 126.

[6]   Local 332 maintains two out-of-work lists, or referral books: one for the Philadelphia Housing Authority ("PHA") and one for all other referrals.   See Defs.' MSJ Memo. at 1-2.   To participate in Local 332's hiring hall, members sign a referral book seeking temporary employment on construction projects.   See id.   Pursuant to Local 332's collective bargaining agreement with PHA, upon PHA request, Local 332 refers qualified members who have entered their name in the PHA referral book.   Id. at 2-3.   Those referred members, if hired by PHA, maintain a traditional employment relationship with PHA.   Id. at 2.

thoroughly explained the reason for maintaining two separate referral books.  Id. at 29.  Robinson reviewed the referral book with Montgomery, and the process of numbering and ordering members in the book.  Id. at 29-33.  Robinson and Boyer both explained the process of referring members to PHA, and that they could not predict when a member would be called for a PHA job because PHA requests are "sporadic," and it depends "on what they're asking for and how many [they are] asking for."  Id. at 38-39.

The Board repeatedly requested that Montgomery provide specific examples of unfair treatment, but he was unable to name members or cite specific instances of being bypassed in favor of other members.  See, e.g., id. at 20-21, 35, 41-43, 46.  Staten stated, "I need to know specifically a person's name . . . and where the job was at because I want to find out who gave somebody a job over you that didn't come off that book downstairs then we can deal with that in an investigation. . . . assumptions [are] not going to help us . . . . But we need your complaints to be legit to address names, locations."  Id. at 43-44.  Montgomery responded, "No, I don't have that information.  I didn't even go out and try to obtain that information.  I just went with my own observations and stuff like that."  Id. at 44-45.  In its decision letter to Montgomery, the Board explained it dismissed his grievance because he failed to substantiate his accusations.  Defs.' Ex. H.

Montgomery contends this Court should waive the exhaustion requirement because it would have been futile to appeal his hearing decision.  Pl.'s Resp. at 13.  Montgomery argues that the denial of his formal grievance and Staten's threatening statements demonstrated that Local 332 "had no plans to alter its views."  Id.  He further argues the internal appeals structure was inadequate because Local 332 failed to follow the constitution's procedures by allowing

7

Robinson to participate in the grievance hearing. Id. at 13-14. Because Robinson handled job referrals, Montgomery argues, he should not have presided over the hearing. Id. at 14 (citing LIUNA Constitution, Article XI, Section 3 (no "member directly interested or involved in the charges may sit as a member of the Trial Board")).

Montgomery fails to cite any evidence showing an appeal to the General Executive Board of the International Union would have been futile or that he faced consistent opposition. Montgomery could have appealed the hearing decision to the Executive Board, which does not include any of the named Defendants. See Defs.' MSJ Memo. at 14-15. Montgomery's written grievance also did not apprise the Board that Robinson should have excused himself from the hearing because Montgomery complained only of Local 332's "dual" job referral system. Montgomery's Formal Grievance, Pl.'s Ex. D; Defs.' Ex. F. He did not name any individual, or indicate that he was challenging Robinson's actions or discretion. See id. Moreover, during the hearing, the Board members struggled to identify Montgomery's grievances. See supra.

B. Violation of the LMRDA

Even assuming an appeal would have been futile and the exhaustion requirement could be waived, Montgomery's claim fails on the merits.

Title I of the LMRDA "provides union members with an exhaustive 'Bill of Rights' enforceable in federal court." Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley, 467 U.S. 526, 536-37 (1984). "In particular, Title I is designed to guarantee every union member equal rights to . . . participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." Id. at 536-37; see also Knight v. Int'l Longshoremen's Ass'n., 457

F.3d 331, 333 (3d Cir. 2006). The LMRDA "was the product of congressional concern with widespread abuses of power by union leadership," and Title I was later adopted to ensure greater "protection to union members who spoke out against the union leadership." Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 352 (1989) (internal quotations omitted). Congress intended Section 101(a)(2) of the LMRDA to restate the constitutional "right to speak one's mind without fear of reprisal."[7] Reed v. United Transp. Union, 488 U.S. 319, 325 (1989) (quoting Steelworkers v. Sadlowski, 457 U.S. 102, 111 (1982)).

In analyzing a Section 101(a) claim, I must determine whether the plaintiff suffered adverse action, including infringement of his free speech, as a result of exercising his membership rights. See Sheet Metal, 488 U.S. at 354. If so, I then must assess that interference with the plaintiff's rights "by reference to the LMRDA's basic objective: 'to ensure that unions are democratically governed, and responsive to the will of the union membership as

---

[7] Section 101(a)(2) of Title I of the LMRDA provides:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of a labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(1). Section 101(a)(1) of the LMRDA is also known as 29 U.S.C. § 411(a)(1). See Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley, 467 U.S. 526, 552 (1984); Ruocchio v. United Transp. Union, Local 60, 181 F.3d 376, 389 (3d Cir. 1999).

expressed in open, periodic elections.'" Id. (quoting Finnegan v. Leu, 456 U.S. 431, 441 (1982)); see also Wiggins v. United Food & Commercial Workers Union, Local No. 56, 420 F. Supp. 2d 357, 364-65 (D.N.J. 2006) aff'd sub nom. Wiggins v. United Food And Commercial Workers Union, Local #56, 303 F. App'x 131 (3d Cir. 2008); Conery v. Niccollai, 34 F. App'x 839, 842-43 (3d Cir. 2002). Thus, the "subject matter of any protected speech must 'directly relate' to the union-membership relationship." Kovach v. Turner Dairy Farms, Inc., 929 F. Supp. 2d 477, 490 (W.D. Pa. 2013) (quoting Semancik v. United Mine Workers of Am. Dist. No. 5, 466 F.2d 144, 154 (3d Cir. 1972)). Any chilling effect on free speech rights is weighed against the needs of the democratic process of the union. See Sheet Metal, 488 U.S. at 355 (citing Finnegan, 456 U.S. at 441).

In determining if a Section 101(a) violation has occurred, I must examine: "the setting in which the incident occurred, the statement made by the defendant, and the effect upon the complainant." Wiglesworth v. Chauffeurs, Teamsters & Helpers Local Union 771, No. Civ. A. 84-4996, 1985 WL 3230, at *9-10 (E.D. Pa. Oct. 22, 1985) (quoting Broomer v. Shultz, 239 F. Supp. 699, 703 (E.D. Pa. 1965), aff'd per curium, 356 F.2d 984 (3d Cir. 1964). "Not every ungentlemanly remark made by a [union officer] to a member is a denial" of a protected right. Boomer, 239 F. Supp. at 703. In Boomer, for example, the court found that the officer's threat to "tear up [the plaintiff's] union book" did not violate the plaintiff's freedom of expression because there was "no evidence that [the plaintiff] was intimidated by the statement, that the remark caused him to yield the floor, or that it has inhibited him in speaking at business meetings." Id. at 704.

Montgomery alleges five violations of Section 101(a)(2): (1) After his first complaint to the union, Staten told him he was going to "shut him down" and that "nobody has a problem but you;" (2) after filing a grievance, Staten told him that he "would be in a boat with the rest of the members that he considers a waste of time" if he continued to complain; (3) when Montgomery attempted to address concerns at a general membership meeting, Staten threatened that he would be brought up on charges and told him to "sit down and shut up;" (4) he was retaliated against and wrongfully terminated from the next three jobs he held after filing this lawsuit; and (5) he was retaliated against by being passed over for job steward positions for which he was qualified. Pl.'s Resp. at 11.

Assuming the truth of Montgomery's allegations, his first two examples fail as a matter of law.   Staten was free to exercise his own freedom of speech in response to Montgomery's exercise of speech.   See Harrison v. Local 54 of Am. Fed'n of State, Cty. & Mun. Emp., AFL-CIO, 518 F.2d 1276, 1281-82 (3d Cir. 1975) (malicious statement by union president to member not cognizable under Section 101(a)(2), which "protects from discipline union members making statements about union affairs; it does not relate to alleged defamations running from the union organization to the union member").   Moreover, there is no evidence that Staten's statements prevented Montgomery's further expression or participation in union affairs.   See Broomer, 239 F. Supp. at 703-04.

The cases Montgomery cites involved violations of freedom of speech and assembly for more egregious union action, such as fines, expulsion, or assault and violence.   See Pl.'s Resp. at 5-6 (citing Mallick v. Int'l Broth. Of Elec. Workers, 644 F.2d 228, 236 (3d Cir. 1981) (in response to their expression of opposing viewpoints, union members underwent disciplinary

11

action, fines, and harassment in the bringing of charges); Ruocchio v. United Transp. Union Local 60, 181 F.3d 376, 379-80 (3d Cir. 1999) (member charged with violation of union constitution and faced expulsion from union); Maier v. Patterson, 511 F.Supp. 436, 440 (E.D. Pa. 1981) (after union member's complaints, union trustee physically assaulted member); Wiglesworth v. Chauffeurs, Teamsters & Helpers Local Union 771, No. 84-4996, 1985 WL 3230, at *9-10 (E.D. Pa. Oct. 22, 1985) (speech threatening violence actionable under 29 U.S.C. § 411); Murphy v. Int'l Union of Operating Engineers, Local 18, 774 F.2d 114, 118, 123 (6th Cir. 1985) ("economic discrimination" involved in manipulating a work referral system to discriminate against a member, and intimidation and physical violence against member, actionable).

Montgomery's third example also fails to show a violation of free speech and assembly. The threat of future charges, which "could have a substantial chilling effect" on a plaintiff's and other members' exercise of free speech rights, may violate the LMRDA. Ruocchio, 181 F.3d at 386. Nevertheless, Section 102(a)(2) subjects union members' right to speak and assemble to "the organization's established and reasonable rules pertaining to the conduct of meetings." 29 U.S.C. § 411(a)(2). Section 102(a)(2) further provides: "nothing herein shall be construed to impair the rights of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member towards the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." Id.

Staten's "threat" came only after Montgomery insisted on raising and arguing a meritless motion at the March 25, 2014 membership meeting. Montgomery moved for Local 332 to

12

amend its rules pertaining to annuity and pensions. PSOF ¶ 27; Pl.'s Dep. at 148-49; Pl.'s Ex. F. However, because the annuity fund is governed by the Laborers' District Council, Local 332, as a distinct legal entity, has no jurisdiction over its operation. See Central Pennsylvania Teamsters Pension Fund, 778 F.Supp. at 831 ("The pension fund is an entirely separate entity from the union and the company."); Defs.' Reply at 4; Staten Aff. ¶ 9; see also Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1309 (3d Cir. 1991) ("local unions are legal entities distinct from the parent body"). Staten informed Montgomery that he could be charged with misconduct under the union constitution if he continued to disrupt the meeting by raising annuity fund business, which is beyond the jurisdiction of the union. See Staten Aff. ¶ 10; PSOF ¶ 31. On April 25, 2014, Staten wrote a letter to Montgomery warning him against raising the annuity fund issue again at future membership meetings. Defs.' Ex. K. Staten also provided the address for the District Council, where Montgomery could direct his annuity and pension concerns. Id. Thus, Staten exercised his right to ensure Montgomery did not unreasonably interfere with the administration of union meetings and gave him the information where he could properly raise his claims. See 29 U.S.C. § 411(a)(2).

Montgomery further claims he was retaliated against when he was terminated from three jobs within a few months of filing his lawsuit.[8] Pl.'s Resp. at 8-9. He contends Andrew

---

[8] Montgomery appears to allege retaliation for generally making complaints to the union, including for filing his lawsuit. See Sec. Am. Compl. ¶¶ 34-36; Pl.'s Resp. at 8-9.

Defendants argue that Montgomery has not shown bringing a lawsuit against a union is protected speech under Section 102(a)(4). Defs.' Reply at 5. I disagree. The right to sue is protected under Title I of the LMRDA. See 29 U.S.C. § 411(a)(4) ("protection of the right to sue"); Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 352 (1989) (Title I was "[d]esigned to guarantee every member equal voting rights, rights of free speech and assembly, and a right to sue") (quoting Finnegan, 456 U.S. at 435).

Robinson, secretary and treasurer of Local 332, showed up at the first two jobsites the same days he was terminated, and suggests Robinson convinced three separate employers to fire him. See PSOF ¶ 33, 35, 44-46; Pl.'s Resp. at 9.

On May 13, 2015, Montgomery was fired from Sabia. PSOF ¶ 33. On the same day, the owner of Sabia emailed Andrew Robinson, explaining Montgomery was fired because he failed to wear a harness after being instructed to do so. See Pl.'s Ex. H. Although Montgomery contends he was terminated from Sabia the same day Local 332 was served with his lawsuit, see PSOF ¶ 34; Pl.'s Resp. at 9, he was terminated early in the day, before Defendants were served with his complaint. See Pl.'s Ex. H (spoke to Montgomery "this morning 5/13/15"); Defs.' Ex. P (Sheriff's certificate of service showing service at 3:15 p.m. and 3:30 p.m. on May 13, 2015). His termination from Sabia cannot serve as evidence of retaliation, and Montgomery presents no other evidence to support retaliation by Defendants.[9]

On June 16, 2015, Montgomery began working for Townscapes, Inc., a job he found through Craigslist.com, not through the Local 332 hiring hall. PSOF ¶ 39-40; Pl.'s Resp. at 9. The next day, June 17, he was terminated because he was unable to operate a truck with manual transmission. PSOF ¶¶ 41-42; Pl.'s Resp. at 9. Montgomery contends he could drive all of Townscapes' vehicles because he had a commercial driver's license, and that Andrew Robinson showed up at the job the same day he was terminated. Pl.'s Resp. at 9; PSOF ¶ 43-44. On June 22, 2015, however, Jack Bachmann, the owner of Townscapes, emailed Andrew Robinson,

---

[9] Montgomery also alleges an employee at the Sabia jobsite warned him that the "union was out to get him." Pl.'s Resp. at 9. The unidentified employee statement is inadmissible hearsay evidence, and Montgomery has not argued that the statement meets a hearsay exception. See Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.")

14

stating, "The following is the information you requested per our phone conversation on Friday June 19." Pl.'s Ex. I. Bachmann explained that although Montgomery was hired as a driver, he could not operate Townscapes' truck and, thus, Townscapes could not use his services. Id. Montgomery argues that his employment and termination by Townscapes should not have concerned Robinson because he did not obtain employment with Townscapes through Local 332. Pl.'s Resp. at 9. Regardless, the June 19 telephone conversation between Bachmann and Robinson was two days after Montgomery was terminated. Furthermore, Montgomery acknowledges that Andrew Robinson came to the job site to argue that Montgomery was entitled to a higher wage rate because Townscapes was paying him only $15.00 per hour but the union rate under a Local 332 landscaping contract was $18.00 per hour. Pl.'s Dep. at 218-22. He also admitted he had difficulty driving the Townscapes truck because he had not driven a truck "in a long time," and that his supervisor had to drive the truck back to the shop for him. Id. at 217-18. Thus, Montgomery's own testimony provides a non-retaliatory reason for Andrew Robinson's presence at Townscapes, and demonstrates the reason for his termination was not pretextual.

On July 9, 2015, Local 332 referred Montgomery to a job at Intech. PSOF ¶ 47-49; Pl.'s Resp. at 10. Montgomery was terminated after five days without reason. Id. PSOF ¶ 50; Pl.'s Resp. at 10. Defendants submitted a letter from Jim Ryan, corporate safety director of Intech, which stated that Montgomery was terminated for taking unauthorized breaks. Pl.'s Ex. J. Montgomery contends he did not take any unauthorized breaks while employed at Intech, PSOF ¶ 52; Pl.'s Resp. at 10, and that the letter from Ryan demonstrates his reason for termination was pretextual because "employers never wrote letters like this to the Union," PSOF ¶ 53.

15

Montgomery has offered no evidence to establish his subjective belief that this type of letter was unusual.   Montgomery's termination from Intech is not evidence of retaliation.

No reasonable jury could infer Local 332, Robinson, or Staten retaliated against Montgomery based on his inconclusive and uncorroborated statement that Andrew Robinson showed up at his jobsite shortly before he was fired.   Although Montgomery "believes" Andrew Robinson had an interest in his termination, Pl.'s Resp. at 9, each employer had a neutral reason for terminating Montgomery.   See Cridland v. Kmart Corp., 929 F. Supp. 2d 377, 389-90 (E.D. Pa. 2013) ("a plaintiff's uncorroborated testimony about discriminatory treatment cannot—on its own—demonstrate invidious intent at the summary judgment stage").

Furthermore, there is insufficient evidence to show Local 332, Robinson, or Staten caused Montgomery to be fired.   See Robinson v. Nat'l Med. Care, Inc., 897 F. Supp. 184, 187 (E.D. Pa. 1995) aff'd, 77 F.3d 463 (3d Cir. 1996) ("possibilities or conjectures of pretext are insufficient to overcome summary judgment"); Solomon, 41 F. App'x at 586; Fusco v. Bucks Cnty. of Pa., 2009 WL 4911938, at *11 (E.D. Pa. Dec. 18, 2009) ("The Plaintiff offers no support, beyond her own testimony, to corroborate her claims."); see also Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990) (in addition to circumstantial evidence, plaintiff's uncorroborated deposition testimony, if believed, gave clear indication of discrimination and was sufficient to survive summary judgment).

To the extent Montgomery is alleging retaliation for his complaints made in 2013 and March 2014, the evidence fails to establish a temporal connection between those complaints and his three terminations in 2015.   Cf. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly

16

suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment."); Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007) (five-month time period between employee's complaint and first adverse action insufficient to raise inference of causation).

Montgomery also claims he was retaliated against because he was not appointed to job steward positions for which he was qualified. PSOF ¶ 57; Pl.'s Resp. at 10. The LIUNA constitution affords discretion to the local union business manager to appoint job stewards. Defs.' Ex. R, LIUNA Const., Art. IV, Section E(3). Montgomery testified that he was passed over for the position of job steward at a particular site by a man named "Hank." Pl.'s Dep. at 128-29; PSOF ¶ 60; Pl.'s Resp. at 10. Although he claims Hank had no certification, and was less qualified for the position, Montgomery offers no evidence to show that he was entitled to the position or that Hank (whose last name is unknown) was unqualified. Montgomery has failed to show Staten misused his discretion to appoint a job steward instead of Montgomery. Cf. Robinson, 897 F. Supp. at 188 (summary judgment awarded where there is insufficient information to determine whether the other employee was similarly situated to plaintiff).

Because Montgomery failed to exhaust his remedies under the LMRDA, and failed to raise any genuine issues of material fact concerning whether Defendants violated his rights under the LMRDA, summary judgment is granted.

An appropriate Order follows.